UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

SUE HARRIS CANNIMORE AND
WENDELL C. HUTCHINSON                                                              PLAINTIFFS

v.                                                              CIVIL ACTION NO. 3:18-CV-174-DPJ-LRA

DISABILITY RIGHTS MISSISSIPPI, INC.
AND POLLY TRIBBLE                                                                  DEFENDANTS

ORDER

This non-diverse case is before the Court on Defendants Disability Rights Mississippi, Inc. ("DRMS") and Polly Tribble's Motion to Dismiss [9]. Defendants seek dismissal of Plaintiffs Sue Harris Cannimore and Wendell C. Hutchinson's federal claims for lack of standing. Defs.' Mem. [10] at 1. They also ask the Court to decline supplemental jurisdiction over Plaintiffs' state-law claims. *Id.* For the reasons that follow, Defendants' Motion to Dismiss [9] is granted as to the third-party claims, but the Court requires additional briefing regarding supplemental jurisdiction, so it is otherwise denied without prejudice.

I.      Background

Plaintiffs Cannimore and Hutchinson—two long-time DRMS employees—say Defendants violated federal and state public policy when they terminated their employment. Compl. [1] ¶ 4. Plaintiffs further assert that Defendants are currently violating the rights of disabled Mississippi children and therefore bring a third-party claim seeking injunctive relief for those individuals.

DRMS is the Mississippi non-profit organization that is federally mandated and funded to protect and advocate for the rights of disabled Mississippians. *Id.* ¶ 5. During their employment at DRMS, Plaintiffs worked to ensure that schools provided federally required educational

services to disabled Mississippi children. *Id.* ¶ 6. They say this included, "when necessary, assist[ing] the parents in taking legal action on behalf of the children." *Id.*

Plaintiffs' troubles at DRMS apparently began when Defendant Tribble became DRMS's Executive Director and initially ordered Plaintiffs to scale back the services they provided to disabled children. *Id.* ¶¶ 9, 10. Fearing that Tribble's order would cause DRMS to violate federal law, Plaintiffs tried to meet with DRMS's Board of Directors. *Id.* Tribble allegedly disagreed with Plaintiffs' concerns and took umbrage with their efforts, demoting the two for "insubordination." *Id.* Tribble then terminated Plaintiffs' employment allegedly for refusing to sign a statement admitting to their insubordination. *Id.*

From these facts, Plaintiffs sued DRMS and Tribble. Unfortunately, their Complaint did not include any counts, and their descriptions of the discrete legal claims has led to confusion. But according to Plaintiffs' Memorandum of Law, they are asserting the following three claims:

> First, Plaintiff[s] allege that their "discharges were in violation of federal public policy of the United States," and that "[u]nder Mississippi law, a violation of federal policy is actionable under Mississippi state law." Complaint, ¶ 17. Plaintiffs, therefore, request "actual and punitive damages . . . for violation of the public policy of Mississippi." Complaint, "Request for Relief," ¶ 3.
>
> Second, Plaintiffs request injunctive relief on behalf of the disabled children, requiring Defendants to perform the federally-required function of providing advocacy services for children. Complaint, "Request for Relief," ¶ 1.
>
> Finally, Plaintiffs seek damages against Defendant Tribble, in her individual capacity, Complaint, "Request for Relief," ¶ 2, because they allege that Defendant Tribble, individually, and through "intentional acts," caused Plaintiffs to be fired "out of malice and ill-will." Complaint, ¶ 13.

Pls.' Mem. [14] at 3. Plaintiffs describe the first and second claim as "federal."

Defendants now seek dismissal, asserting that Plaintiffs lack standing for the federal claims and that the Court should decline supplemental jurisdiction over the state-law claim.

2

II. Standard

As an initial point, the Court elects to review Defendants' standing arguments under Rule 12(b)(6), not Rule 12(b)(1). To explain, Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(1), contending that Plaintiffs lack standing to sue in federal court. But in their analysis, Defendants challenge both Article III constitutional standing, which is viewed under Rule 12(b)(1), and prudential standing, which is viewed under Rule 12(b)(6). *See Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011) (explaining that "[u]nlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential . . . standing is properly granted under Rule 12(b)(6)").

"If both constitutional and prudential objections are raised to standing . . . it is entirely appropriate to deny standing on prudential grounds if that course is easier, or more clearly right, than to rule on constitutional grounds first." 13A Charles Alan Wright, et al., Fed. Prac. & Proc., § 3531.15 (2d ed. 2002); *see In re Deepwater Horizon*, 857 F.3d 246, 252 (5th Cir. 2017) (assuming constitutional standing while finding lack of prudential standing).

Such is the case here. The parties have more thoroughly addressed prudential standing, and the existing authority is better settled. Thus, the Court assumes without deciding that Plaintiffs have Article III standing and will consider "the alternative threshold question whether they have standing to raise the rights of others." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004). Accordingly, Rule 12(b)(6) governs.

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188

F.3d 322, 324 (5th Cir. 1999) (per curiam)). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations and footnote omitted). In deciding whether to grant a Rule 12(b)(6) motion, a district court may not "go outside the complaint." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).

Generally, a "court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The decision to exclude such materials falls within the district court's "complete discretion." *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 194 n.3 (5th Cir. 1988) (citation omitted).

The Court will exercise that discretion here by ignoring Defendants' factual arguments and Plaintiffs' affidavits [13-1, 13-2, 13-3, 13-4, 13-5]. Even if the Court were inclined to consider those statements under Rule 56, they are largely duplicative of the rest of the record and would not change the Court's analysis or the outcome of the Defendants' Motion to Dismiss [9].

Regardless, the Court declines to accept the apparent invitation to convert this motion under Rule 12(d). So, review will be limited to the Complaint [1] and the arguments presented by the parties in their briefs.

III. Analysis

Plaintiffs say DRMS's failure to protect the rights of children with mental illnesses violates 42 U.S.C. §§ 10802(2), 15041, 15043, as well as the implementing federal regulations. *See* Compl. [1] ¶ 5. These statutes are included in what courts commonly refer to as the Protection and Advocacy or "P & A" statutes. *See J. H. ex rel. Gray v. Hinds Cty.*, No. 3:11-CV-327-DPJ-FKB, 2011 WL 3047667, at *1 (S.D. Miss. July 25, 2011). Plaintiffs also say that their resistance to DRMS's conduct cost them their jobs.

For clarity, this Order begins by determining that Plaintiffs lack standing to bring the third-party claim. It then concludes that Plaintiffs do have standing to pursue the wrongful-termination claim—the only other claim they describe as "federal"—but that the parties must further brief whether that claim actually presents a federal question. Whether it does will then impact the Court's analysis of supplemental jurisdiction.

A. Third-Party Claim

Defendants say Plaintiffs lack standing to pursue third-party claims on behalf of Mississippi children covered by the P & A statutes. Generally, litigants lack standing to assert the rights of others. *See United States Dep't of Labor v. Triplett*, 494 U.S. 715, 720 (1990) (plurality opinion); *see also Warth v. Seldin*, 422 U.S. 490, 499 (1975) (holding that the "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties"). Thus, judicial review should not "be placed in the hands of 'concerned bystanders' to use it simply as a 'vehicle for the vindication of value

interests (or state-law torts).'" *Diamond v. Charles*, 476 U.S. 54, 62 (1986) (quoting *United States v. SCRAP*, 412 U.S. 669, 687 (1973)). To assert the rights of others, litigants must make two additional showings: (1) "a 'close' relationship with the person who possesses the right" and (2) "a 'hindrance' to the possessor's ability to protect his own interests." *Kowalski*, 543 U.S. at 130 (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991)).

Starting with the closeness of their relationship, Plaintiffs do not directly address this issue in their memorandum but say in their Complaint that they are "su[ing] on behalf of the children with disabilities, whom they were servicing [before termination], and whom they would service in the future [if reinstated.]" Compl. [1] ¶ 14. Cannimore was an advocate at DRMS. Hutchinson was an attorney.

Of the two, it is at least arguable that an attorney-client relationship could—under certain circumstances—satisfy the relationship test. *Compare Conn v. Gabbert*, 526 U.S. 286, 292 (1999) (holding that attorney "clearly had no standing to raise the alleged infringement of the rights of his client"), *with Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 n.3 (1989) (describing attorney-client relationship under facts of that case as presenting "special consequences" that met the relationship test).

Regardless, it seems that the attorney-client relationship must be with existing clients. In *Kowalski*, attorneys "invoke[d] the attorney-client relationship to demonstrate the requisite closeness," relying on hypothetical future clients rather than existing ones. 543 U.S. at 130. The Supreme Court rejected the argument, noting: "[W]e have recognized an attorney-client relationship as sufficient to confer third-party standing," but "[t]his existing attorney-client relationship is, of course, quite distinct from the hypothetical attorney-client relationship posited here." *Id.* at 131. As stated before, Plaintiffs did not address this issue in their memorandum,

6

but on this record, it appears that Plaintiffs have not demonstrated a sufficiently close relationship.

Even assuming a sufficient relationship, Plaintiffs fail to show a meaningful hindrance to the ability to assert these rights. "If there is some genuine obstacle . . . the party who is in court becomes by default the right's best available proponent." *Singleton v. Wulff*, 428 U.S. 106, 116 (1976). According to the Fifth Circuit, "[t]he general rule against third-party standing will often not bar a claim if . . . the third party for some reason cannot assert its own rights." *McCormack v. Nat'l Collegiate Athletic Ass'n*, 845 F.2d 1338, 1341 (5th Cir. 1988).

As the Supreme Court explained in *Powers*, the hindrance must be "beyond the control of the right holder . . . signal[ing] that the rightholder did not simply decline to bring the claim on his own behalf, but could not in fact do so." 499 U.S. at 450. So, for example, third-party standing would exist to assert the rights of deceased parents, rights of potential jurors facing discriminatory strikes, various privacy concerns, and insurmountable procedural hindrances. *Id.* at 449 (listing sufficient obstacles to convey third-party standing).

Here, Plaintiffs say "the children with mental disabilities are *unlikely* to be able to pursue this claim through the actions of the parents or guardians for a variety of reasons." Pls.' Mem. [14] at 11 (emphasis added). More specifically, they assert that disabled children are hindered because the families of the "majority" of the children are too economically disadvantaged to obtain attorneys, the attorneys knowledgeable of the law surrounding this claim are few, and the parents are unlikely to know their rights have been violated by DRMS. *Id*.

These arguments fall short. While bringing suit may be more difficult or "unlikely" for some, Plaintiffs themselves concede that not all the children come from economically disadvantaged families. *Id*. This is not the same as a deceased party or the other examples

7

where standing was found. Moreover, there are attorneys—including counsel in this case—who are knowledgeable about these claims.

The Court recognizes that disabled children deserve advocacy and that their parents face obstacles that others do not. But Plaintiffs have not demonstrated the type of hindrance that would justify a third-party claim. Thus, Plaintiffs fail to demonstrate standing; this portion of the motion is granted.

B. Plaintiffs' Wrongful-Termination Claim

The only other claim Plaintiffs refer to as "federal" is their one for wrongful termination. Plaintiffs' Complaint obliquely describes that claim as seeking relief "for themselves individually, because their discharge violates public policy as set forth in federal statutes." Compl. [1] ¶ 13.

Defendants construe that averment as asserting a federal claim under the P & A statutes. They therefore say Plaintiffs lack standing because the cited statutes do not address employment decisions. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990) (holding that plaintiffs "must establish that the injury [they] complain[] of ([their] aggrievement, or the adverse effect upon [them]) falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for [their] complaint") (citing *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 396–397 (1987)).

Had Defendants' characterization of the wrongful-termination claim been true, then their standing arguments would have teeth. But Plaintiffs are not pursuing this claim under any federal statute. They are instead asserting a claim based on the public-policy exception to Mississippi's at-will employment doctrine.

That exception was first recognized in *McArn v. Allied Bruce-Terminix Co., Inc.*, where the Mississippi Supreme Court held that "an employee who is discharged for reporting illegal acts of his employer to the employer or anyone else is not barred by the employment at will doctrine from bringing action in tort for damages against his employer." 626 So. 2d 603, 607 (Miss. 1993). According to Plaintiffs, Mississippi has expanded *McArn* to allow wrongful-termination claims where the termination violates public policy as created by federal or state law. Pls.' Mem. [14] at 6 (citing *Swindol v. Aurora Flight Scis. Corp.*, 194 So. 3d 847, 852 (Miss. 2016)). In this case, they say the P & A statues create federal public policy that DRMS violated by terminating their employment. *Id.* at 3.

Thus, Plaintiffs pursue their wrongful-termination claim "under Mississippi law" for alleged violation of federal public policy as established by the P & A statutes. *Id.* They are not asserting claims under the P & A statues themselves. And because they suffered an injury when they were fired, Plaintiffs have standing to pursue relief. Defendants' standing arguments are not persuasive, and this portion of the motion must be denied.

That does not, however, fully resolve the matter. In their Reply, Defendants tacitly concede standing to pursue this claim under a *McArn*-type theory, but they alternatively say (1) Plaintiffs fail to state such a claim, or (2) the Court should otherwise decline supplemental jurisdiction under 28 U.S.C. § 1367. *See* Defs.' Reply [15] at 5–6. Both arguments present a threshold issue the parties have not addressed—does the *McArn* claim independently create federal-question jurisdiction.

A claim premised on state law can create federal-question jurisdiction if the case "necessarily turn[s] on some construction of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9 (1983). That could happen in this case because a

plaintiff pursuing a *McArn*-type theory must show that his or her construction of the statute is correct. *See Baylis v. Wal-Mart Stores, Inc.*, No. 1:10-CV-00069-GHD, 2012 WL 3597420, at *6 (N.D. Miss. Aug. 20, 2012) (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 403 (5th Cir. 2005) ("The Fifth Circuit has explained that an employee's subjective belief that the acts reported were illegal does not satisfy *McArn*; instead, the alleged act must actually be illegal.")).

Conversely, Defendants say Mississippi has not expanded *McArn* to the present context. *If* Defendants' argument can be decided in their favor without resolving any dispute over the construction of the P & A statutes, then absent supplemental jurisdiction, the Court would probably lack subject-matter jurisdiction to consider Defendants' Rule 12(b)(6) argument on the *McArn* claim. In other words, if the Court finds no federal question and declines supplemental jurisdiction, then it seems the claim would be dismissed without prejudice to refiling in state court. The Court has not researched these issues in any depth and will give the parties an opportunity to do so.

For these reasons, the Court denies this portion of Defendants' motion based on their original argument—lack of standing. But given the unresolved jurisdictional issues, the Court will require additional briefing to ensure subject-matter jurisdiction. *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) (A "federal court may raise subject matter jurisdiction *sua sponte*."). Defendants are instructed to file an amended motion no later than January 18, 2019, addressing the issues the Court has raised. The response and reply will be due in accordance with the local rules.

C. Supplemental Jurisdiction

Defendants argue that supplemental jurisdiction is generally declined if the Court dismisses all claims presenting a federal question. *See* Defs.' Mem. [10] at 7 (citing *Watson v.*

10

*City of Allen*, 821 F.3d 634, 642 (5th Cir. 2016)). Plaintiffs acknowledge the point but argue that "if this Court allows any federal claim to go forward, it should also entertain supplemental jurisdiction over the state law claim for malicious interference with employment." Pls.' Mem. [14] at 13. So the question remains whether the *McArn* claim creates federal-question jurisdiction. This portion of the motion is denied without prejudice and will be reconsidered after the parties brief the issues addressed above.

V.  Conclusion

Defendants' Motion to Dismiss [9] is granted as to the third-party claims and otherwise denied without prejudice. By January 18, 2019, Defendants must file an amended motion addressing the issues discussed in Section III(A). The response and reply will be filed within the time provided by the local rules.

**SO ORDERED AND ADJUDGED** this the 7th day of January, 2019.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE